IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN KNOPP and SHAUN KNOPP,<br><br>         Plaintiffs,<br>   v.<br><br>JP MORGAN CHASE BANK N.A.,<br>QUALITY LOAN SERVICE CORP.,<br>and DOES 1-50 inclusive,<br><br>         Defendants. | 1:12-CV-1428  AWI SKO<br><br>ORDER ON PLAINTIFF'S<br>MOTION FOR TEMPORARY<br>RESTRAINING ORDER<br><br>(Doc. Nos. 2, 3) |

This case stems from a mortgage obtained by Plaintiffs Dean Knopp and Shaun Knopp (collectively "Knopp") for real property located in Moccasin, California. Knopp obtained the mortgage from Washington Mutual. Defendants are attempting to foreclose on the real property. In response, Knopp has filed this action and is proceeding pro se. Knopp alleges violations of the 12 U.S.C. § 226, 12 U.S.C. § 2605, 12 U.S.C. § 1821, fraud, UCC Art. 3, quiet title, declaratory and injunctive relief, intentional and negligent infliction of emotional distress, and California Business & Professions Code § 17200. Currently pending before the Court is Knopp's *ex parte* application for a temporary restraining order. For the reasons that follow, the Court will grant Knopp's motion and set a briefing schedule for a preliminary injunction.

## ALLEGATIONS & BACKGROUND

From the verified complaint, Knopp obtained a construction/roll over loan from

1  Washington Mutual Bank on July 26, 2006, for real property located at 14600 Moccasin Ranch
2  Road, Moccasin, California 95347 ("the Property").  A Deed of Trust was issued that identified
3  Washington Mutual as the lender and beneficiary, California Reconveyance Company as the
4  Trustee, and Plaintiffs (along with Peggy Knopp) as the borrowers.
5      Plaintiffs are informed and believe that, between August 1, 2006, and August 30, 2006,
6  Washington Mutual transferred the Knopp's note to Washington Mutual Mortgage Securities
7  Corporation.  The note was then sold to an investment trust and became part of, or was subject
8  to, a Loan Pool, a Pooling and Servicing Agreement, a Collateralized Debt Obligation, a
9  Mortgage-Backed Security, a Mortgage Pass-Through Certificate, a Credit Default Swap, an
10 Investment Trust, and/or a Special Purpose Vehicle.  The security is identified with a Standard &
11 Poors CUSIP number and Pool Number.  Thereafter, Washington Mutual acted solely as a
12 servicer of the loan, and was neither the lender nor the beneficiary after August 30, 2006.
13     On September 25, 2008, the Office of Thrift Supervision closed Washington Mutual and
14 appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver.  Defendant JP
15 Morgan Chase ("Chase") purchased certain assets and liabilities of Washington Mutual from the
16 FDIC pursuant to a Purchase and Assumption Agreement ("PAA").
17     Chase represented to Knopp that Washington Mutual was the previous servicer on the
18 loan, and that Chase was the new servicer.  Chase later represented that it was the beneficiary of
19 the loan under the note and deed of trust.  Chase claims that it is the note holder, lender,
20 beneficiary, and servicer, but it has not recorded a claim of ownership.  Chase asserts that it is the
21 beneficiary of the deed of trust at issue because it acquired that interest through the PAA.
22     On March 15, 2009, a notice of default was executed by Defendant Quality Loan Service
23 Corporation ("QLS") and recorded on March 19, 2009, in the Tuolumne County Recorder's
24 Office.  The notice of default represented that QLS was the agent of the beneficiary and the
25 qualified trustee.  A substitute of trustee was executed by Jodie Sobatta for Chase on March 25,
26 2009, and recorded on May 1, 2009, in the Tuolumne County Recorder's Office.  The substitute
27 represented that Chase was the beneficiary and that Chase now desired for QLS to be the new
28 trustee.

A notice of trustee's sale was executed on June 6, 2009, and recorded on June 29, 2009, in the Tuolumne County Recorder's Office. The notice represented that the sale would be held by the duly appointed trustee and that QLS was attempting to collect a debt on behalf of the holder and owner of the note.

A new notice of trustee sale was recorded on August 16, 2012 in the Tuolumne County Recorder's Office. This notice also represented that the sale would be held by the duly appointed trustee and that QLS was attempting to collect a debt on behalf of the holder and owner of the note. The trustee sale is currently scheduled to take place on September 4, 2012, at 3:30 p.m.

From the declaration of Dean Knopp, Knopp received notice of the trustee sale on August 15, 2012. Knopp sent correspondences to defense counsel in an effort to postpone the sale. On August 27, 2012, Knopp contacted QLS's legal department and was told that QLS would not oppose an ex parte TRO. QLS also provided Knopp with a fax number in which to send the complaint. Also on August 27, 2012, Knopp contacted Chase's registered agent for service of process. Knopp told the agent that a lawsuit and application for a TRO would be filed on August 30, 2012. The agent responded that it would contact Chase, but that the agent does not accept faxes.

In one of the correspondences between Dean Knopp and Melissa Couts, who appears to be legal counsel for QLS, there is an indication that the real property has been the subject of state court litigation. In part, the e-mail correspondence reads: "There is no active litigation left for the parties to 'settle.' All of your claims have been dismissed, and the Court of Appeal upheld the dismissal." Knopp Dec. Ex. C (e-mail dated August 24, 2012 from Melissa Couts).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 65(b), a court may issue an *ex parte* temporary restraining order only if: (1) it clearly appears . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should

not be required.  Fed. R. Civ. Pro. 65(b); Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006).  Rule 65(b)'s requirements are "stringent," and temporary restraining orders that are granted *ex parte* are to be "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 438-39 (1974); McCord, 452 F.3d at 1131.

The substantive standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction.  Bronco Wine Co. v. U.S. Dep't of Treasury, 997 F.Supp. 1309, 1313 (E.D. Cal. 1996); Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F.Supp. 1320, 1323 (N.D. Cal. 1995); see also Welker v. Cicerone, 174 F.Supp.2d 1055, 1062 (C.D. Cal. 2001).  A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008); Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011).  "Injunctive relief . . . must be tailored to remedy the specific harm alleged."  Park Vill., 636 F.3d at 1160.

## DISCUSSION

A temporary restraining order is warranted.  First, Plaintiffs have shown a likelihood of success on their claim for wrongful foreclosure.  Plaintiffs' complaint is verified and alleges that Washington Mutual transferred Plaintiff's note to Washington Mutual Mortgage Securities Corporation and thereafter only acted as servicer, all of which occurred prior to Chase's acquisition of Washington Mutual's assets through the PAA.  See Complaint at ¶¶ 24-26.  Courts have found that these allegations are sufficient to call into question Chase's ability to foreclose, and support a claim for wrongful foreclosure.  See Barrionuevo v. Chase Bank, N.A., 2012 U.S. Dist. LEXIS 109935, *21-*27 (N.D. Cal. Aug. 6, 2012); Javaheri v. JP Morgan Chase, 2011 U.S. Dist. LEXIS 62152, *12-*14 (C.D. Cal. June 2, 2011).

Second, because real property is considered unique, its loss through foreclosure is generally considered sufficient to constitute an irreparable injury. See Sundance Land Corp. v. Community First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661-62 (9th Cir. 1988); Osorio v. Wells Fargo Bank, 2012 U.S. Dist. LEXIS 72719, *7 (N.D. Cal. May 25, 2012); Aguilar v. CitiMortgage, Inc., 2010 U.S. Dist. LEXIS 55294, *13 (E.D. Cal. Jun. 4, 2010); Wrobel v. S.L. Pope & Assocs., 2007 U.S. Dist. LEXIS 59779, *3 (S.D. Cal. Aug. 15, 2007). Thus, Plaintiffs have demonstrated irreparable injury. See id.

Third, with respect to the balancing of the equities and the public interest, Defendants' interest in the Property depends upon what was actually obtained by Chase in the PAA. If Chase merely obtained the right to service the loan, then Chase has little if any interest in the Property. However, if Chase obtained the deed of trust's beneficial interest in the Property, then Chase's interest is secured by the deed of trust. Further, it appears that Defendants attempted to foreclose on the Property in 2009, but for some reason abandoned those efforts until August 2012. It appears that Defendants were willing to wait three years before attempting to foreclose. Having to wait no more than two additional weeks before a preliminary injunction motion can be heard is not a great hardship, relative to Knopp losing the Property. This factor weighs in favor of Plaintiffs.

Fourth, since the trustee sale is set to occur on September 4, 2012, at 3:30 p.m., and September 3, 2012, is a holiday, the Court does not believe that further notice, beyond the certification of Dean Knopp's direct communications with QLS's legal service and Chase's agent for service, is practicable.

In terms of security, Rule 65(c) states that a restraining order may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." A submission by Plaintiffs indicates that the Property has a real market value of $145,000.00, and that the amount owed on the property is $106,000.00.[1]  See Plaintiff's Ex Parte Notice and Motion/Application at p.13.0.

---

[1] Plaintiffs state that they are willing and able to execute a loan modification, with the amount of the new loan being $106,000. See Plaintiff's Ex Parte Notice and Motion/Application at p.13.0.

Plaintiffs request that no security be issued.  However, a submission by the parties indicates that the Property may have already been the subject of litigation.  This raises the possibility defenses of such as issue and/or claim preclusion.  In light of these considerations, the Court finds that a security of $550.00 (five hundred fifty dollars), which appears to be approximately 5% of the debt owed on the property, represents a sufficient security.

## CONCLUSION

Plaintiff moves for a TRO that would restrain defendants from conducting a trustee sale of the Property on September 4, 2012, at 3:30 p.m.  After considering the application, Plaintiffs have sufficiently established a likelihood of success, irreparable injury, and that the balance of hardships and public interest weigh in their favor.  Further, considering the short time until the trustee's sale, additional notice and opportunity to be heard is not practical.  As such, the Court will grant Plaintiff's request for a temporary restraining order.

## ORDER

Accordingly, for the good cause appearing as discussed above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for an ex parte temporary restraining order is GRANTED;
2. Defendants and their agents and assigns are RESTRAINED from proceeding with the Trustee Sale, currently set for September 4, 2012, at 3:30 p.m., of the real property located at 14600 Moccasin Ranch Road, Moccasin, California 95347, until further order of the Court;
3. Defendants shall appear on September 14, 2012, at 1:30 p.m. in Courtroom No. 2 and SHOW CAUSE why a Preliminary Injunction should not be granted that restrains and enjoins Defendants from proceeding with a Trustee Sale of the property located at 14600 Moccasin Ranch Road, Moccasin, California 95347, during the entire pendency of this matter;

4. Defendants shall file an opposition to Plaintiffs' motion for preliminary injunction on or by 2:00 p.m. on September 7, 2012, and shall ensure that Plaintiffs receive the opposition on September 7, 2012;[2]

5. Plaintiff shall file a reply to Defendants' opposition on or by 4:00 p.m. on September 12, 2012;[3]

6. Plaintiff shall file with the Court a security in the amount of $550.00 (five hundred fifty dollars) on or by September 13, 2012;[4]

7. Plaintiff shall forward a copy of this order to Defendants immediately, and shall file with the Court a certificate of service of this order on Defendants; and

8. This temporary restraining order is entered on August 31, 2012, at 2:30 p.m.

IT IS SO ORDERED.

Dated:   August 31, 2012                               _____
                                                      CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The briefing should include a discussion about the amount of an additional bond, if necessary, should a preliminary injunction issue.

[3] The Court clarifies that the Court is to have actual possession of the reply on or by 4:00 p.m. on September 12, 2012. It will not be sufficient for Plaintiffs to deposit their reply in the mail by September 12, 2012.

[4] The Court refers the parties to Local Rule 151, which deals with the provision of a security or bond.