# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN KNOPP and SHAUN KNOPP, ) | 1:12-CV-1428  AWI SKO |
| ) | |
| Plaintiffs, ) | |
| v. ) | ORDER ON PLAINTIFFS' |
| ) | MOTION FOR PRELIMINARY |
| JP MORGAN CHASE BANK N.A., ) | INJUNCTION AND ORDER |
| QUALITY LOAN SERVICE CORP., ) | TO SHOW CAUSE |
| and DOES 1-50 inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

    This case stems from a mortgage obtained by Plaintiffs Dean Knopp and Shaun Knopp for real property located in Moccasin, California.  Plaintiffs obtained the mortgage from Washington Mutual.  Defendants are attempting to foreclose on the real property.  In response, Plaintiffs have filed this action and are proceeding pro se.  Plaintiffs allege violations of 12 U.S.C. § 226 ("TILA"), 12 U.S.C. § 2605 ("RESPA"), 12 U.S.C. § 1821 ("FIRREA"), fraud, UCC Art. 3, quiet title, declaratory and injunctive relief, intentional and negligent infliction of emotional distress, and California Business & Professions Code § 17200 ("UCL").  On August 31, 2012, the Court granted Plaintiffs' motion for an ex part temporary restraining order, issued an order to show cause why a preliminary injunction should not issue, and set a briefing schedule.  Defendants have filed their opposition, and Plaintiffs have filed their reply.  After considering the submissions of the parties, the Court concludes that a preliminary injunction should not issue and that Plaintiffs should show cause why this case should not be dismissed.

**ALLEGATIONS FROM THE COMPLAINT**

From the verified complaint, Knopp obtained a construction/roll over loan from Washington Mutual Bank ("Wamu") on July 26, 2006, for real property located at 14600 Moccasin Ranch Road, Moccasin, California 95347 ("the Property").  A Deed of Trust was issued that identified Washington Mutual as the lender and beneficiary, California Reconveyance Company as the Trustee, and Plaintiffs (along with Peggy Knopp) as the borrowers.

Plaintiffs are informed and believe that, between August 1, 2006, and August 30, 2006, Wamu transferred the Plaintiffs' note to Washington Mutual Mortgage Securities Corporation ("WMMSC").  The note was then sold to an investment trust and became part of, or was subject to, a Loan Pool, a Pooling and Servicing Agreement, a Collateralized Debt Obligation, a Mortgage-Backed Security, a Mortgage Pass-Through Certificate, a Credit Default Swap, an Investment Trust, and/or a Special Purpose Vehicle.  The security is identified with a Standard & Poors CUSIP number and Pool Number.  Thereafter, Wamu acted solely as a servicer of the loan, and was neither the lender nor the beneficiary after August 30, 2006.

On September 25, 2008, the Office of Thrift Supervision closed Wamu and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver.  Defendant JP Morgan Chase ("Chase") purchased certain assets and liabilities of Wamu from the FDIC pursuant to a Purchase and Assumption Agreement ("PAA").

Chase represented to Plaintiffs that Wamu was the previous servicer on the loan, and that Chase was the new servicer.  Chase later represented that it was the beneficiary of the loan under the note and deed of trust.  Chase claims that it is the note holder, lender, beneficiary, and servicer, but it has not recorded a claim of ownership.  Chase asserts that it is the beneficiary of the deed of trust at issue because it acquired that interest through the PAA.

On March 15, 2009, a notice of default was executed by Defendant Quality Loan Service Corporation ("QLS") and recorded on March 19, 2009, in the Tuolumne County Recorder's Office.  The notice of default represented that QLS was the agent of the beneficiary and the qualified trustee.  A substitute of trustee was executed by Jodie Sobatta for Chase on March 25, 2009, and recorded on May 1, 2009, in the Tuolumne County Recorder's Office.  The

substitution represented that Chase was the beneficiary and that Chase now desired for QLS to be the new trustee.

A notice of trustee's sale was executed on June 6, 2009, and recorded on June 29, 2009, in the Tuolumne County Recorder's Office. The notice represented that the sale would be held by the duly appointed trustee and that QLS was attempting to collect a debt on behalf of the holder and owner of the note.

A new notice of trustee sale was recorded on August 16, 2012, in the Tuolumne County Recorder's Office. This notice also represented that the sale would be held by the duly appointed trustee and that QLS was attempting to collect a debt on behalf of the holder and owner of the note. The trustee sale was scheduled to take place on September 4, 2012, at 3:30 p.m., but this Court enjoined that sale until further notice on August 31, 2012.

## **ADDITIONAL INFORMATION FROM SUBMISSION OF PARTIES**[1]

A notice of default and an election to sell under deed of trust was recorded in the Tuolumne County Recorder's Office on March 19, 2009. See RJN Ex. 3.

On July 13, 2009, Plaintiffs filed a complaint in the Tuolumne County Superior Court ("Knopp I"), case number CV54873 . See RJN Ex. 7. In addition to the original complaint, four amended complaints were filed. See RJN Exs. 8, 10, 12, 14. The Tuolumne County Superior Court sustained demurrers to each of the amended complaints. See RJN Exs. 9, 11, 13, 15. The demurrers were sustained with leave to amend some causes, and without leave to amend other causes of action. See id. When the superior court granted the demurrer to the fourth amended complaint on February 3, 2011, leave to amend was not granted and final judgment was entered against Plaintiffs. See RJN Exs. 15, 16.

---

[1] As part of their opposition to a preliminary injunction, Defendants have filed a Request for Judicial Notice ("RJN"). See Doc. No. 11. The RJN documents are either court records from the Tuolumne County Superior Court or the California Fifth District Court of Appeal (Exhibits 7-22), documents filed in the Tuolumne County Recorder's Office (Exhibits 3-6), or documents from the Federal Deposit Insurance Corporation (Exhibits 1-2). These documents may be judicial noticed as court records and public records/documents that are not subject to reasonable dispute. See Fed. R. Evid. 201; Botelho v. U.S. Bank, N.A., 692 F.Supp.2d 1174, 1178 (N.D. Cal. 2010); Molina v. Wash. Mut. Bank, 2010 U.S. Dist. LEXIS 8056, *7-*8 (S.D. Cal. Jan. 29, 2010); Allen v. United Fin. Mortg. Corp., 660 F.Supp.2d 1089, 1093-94 (N.D. Cal. 2009). The Court grants Defendants' RJN. See id.

In granting the various demurrers, leave to amend was denied with respect to the following causes of action: fraud due to lack of standing by Chase to foreclose, intentional misrepresentation, violations of California Civil Code §§ 1572, 2923.5, 2923.52, 2923.53, 2923.54, 2923.6 and 2924, California Commercial Code § 3-301 based on an alleged false notice of default and an unlawful pursuit of a foreclosure sale against the Property, and California Business & Professions Code § 17200 based on lack of standing by Chase to foreclose because Chase was not assigned rights under the deed of trust and was not the holder of the note and QLS was not validly substituted as trustee. See RJN Exs. 8-15.

On April 13, 2011, Plaintiffs appealed the judgment of dismissal in Knopp I to the Fifth District Court of Appeal ("DCA"). See RJN Ex. 17. As part of their reply brief to the DCA, Plaintiffs argued that, between August 1, 2006, and August 30, 2006, Wamu transferred the Knopp's note to WMMSC. See RJN Ex. 18. The note was then sold to an investment trust and became part of, or was subject to, a Loan Pool, a Pooling and Servicing Agreement, a Collateralized Debt Obligation, a Mortgage-Backed Security, a Mortgage Pass-Through Certificate, a Credit Default Swap, an Investment Trust, and/or a Special Purpose Vehicle. Id.

On September 26, 2011, Plaintiffs filed a complaint in the Tuolumne County Superior Court ("Knopp II"), case number 56909. See RJN Ex. 20. The issues raised and the causes of action alleged in Knopp II were extremely similar as those raised in Knopp I. Cf. RJN Exs. 8, 10, 12, 14 with RJN Ex. 20. Chase filed a demurrer to the complaint, and the Superior Court granted the demurrer without leave to amend. See RJN Ex. 21. On January 21, 2012, judgment was entered against Plaintiffs in Knopp II. See RJN Ex. 22. The judgment stated in pertinent part that the action was dismissed "with prejudice." Id. No appeal was taken from this order.[2]

On July 11, 2012, the DCA issued an opinion that affirmed the superior court's orders and dismissal. See Knopp v. JPMorgan Chase Bank, N.A., 2012 Cal. App. Unpub. LEXIS 5105 (July 11, 2012). As part of the ruling, the DCA held:

Plaintiffs claim that their loan was sold by Washington Mutual to its subsidiary,

---

[2] Defendants contend that no appeal was taken in Knopp II, and Plaintiffs did not rebut that assertion in their reply. Additionally, the Court reviewed the docket information for the Fifth District Court of Appeal and found no appeal with respect to Knopp II. Botelho, 692 F.Supp.2d at 1178.

4

>Washington Mutual Mortgage Securities Corporation, that the contract between FDIC and Chase does not contain a listing of each individual loan or deed of trust, that Chase failed to establish by evidence subject to judicial notice that it was assigned the deed of trust plaintiffs had signed with Washington Mutual, and that the loan was subsequently securitized.
>
>The trial court impliedly took judicial notice of Chase's contract with FDIC. The trial court's reliance on the agreement was appropriate under Evidence Code section 452, subdivision (h), as facts "not reasonably subject to dispute[,] ... capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." That document established that Chase was assigned all loans owned by Washington Mutual and its subsidiaries. The mere fact that the FDIC contract did not contain a listing of each individual loan or deed of trust did not negate the broad and inclusive language of the agreement itself, assigning all such loans to Chase. Nor does the fact, the loan was subsequently securitized deprive Washington Mutual of the ownership necessary to support assignment of the loan and deed of trust to Chase under the terms of the FDIC agreement.

Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*9 (footnotes and citations omitted). The DCA also held:

>We conclude the trial court correctly found that Chase properly asserted the right to foreclose on the deed of trust pursuant to the assignment of loans by FDIC.
>
>All other defects in the foreclosure procedure alleged by plaintiffs do not constitute acts supporting an action for wrongful foreclosure. At various points, the trial court sustained, without leave to amend, all plaintiffs' causes of action that could be considered wrongful foreclosure causes of action. In particular, these included the causes of action for failure to produce the original promissory note, for violation of Civil Code §§ 2923.5 and 2923.6, and for violation of Business and Professions Code § 17200. First, California law does not require the beneficiary of the deed of trust to have possession of the promissory note to foreclose on a deed of trust. Second, a plaintiff cannot state a cause of action under Civil Code § 2923.5, in the absence of allegations of prejudice which are not present here. In addition, Civil Code § 2923.5 does not create a private right of action for damages or permanent injunctive relief; instead, it permits only a temporary delay in foreclosure which is not the remedy sought in the present case. Third, Civil Code § 2923.6 does not create a private right of action—nor, indeed, does it impose any duties on parties involved in a foreclosure. Instead, it "merely expresses the [Legislature's] hope that lenders will offer loan modifications on certain terms." Accordingly, an alleged violation of that section does not support a cause of action. Fourth, in the absence of any valid claims of unlawful conduct, and in the absence of prejudice to plaintiffs' own monetary or property interests, no claim is stated under Business and Professions Code § 17200.
>
>Accordingly, we conclude the trial court did not err in sustaining the demurrer to those causes of action in which plaintiffs attempted to state a cause of action for wrongful foreclosure.

Id. at *14-*16. The DCA also explained that the Superior Court properly denied leave to amend:

>. . . when a demurrer is sustained without leave to amend, "the burden is on the plaintiff to demonstrate that an amendment would cure the defect." Plaintiffs have not established that they can allege facts that would state a cause of action if

5

permitted to further amend the complaint and, as a result, have not established that the trial court abused its discretion in denying leave to file a fifth amended complaint against Chase.

Id. at *16. No appeal was taken from the DCA's decision. See Fifth District Court of Appeal Docket for Case F062321.[3]

As part of the Court's temporary restraining order, the Court noted that there was an indication that the Property had previously been the subject of state court litigation. An e-mail correspondence to Plaintiffs from QLS's attorney contained the following: "There is no active litigation left for the parties to 'settle.' All of your claims have been dismissed, and the Court of Appeal upheld the dismissal." Knopp TRO Dec. Ex. C (August 24, 2012 Couts e-mail).

Finally, the declaration of one of Chase's HL Senior Research Specialists, Roberto Silva, states that Chase acquired its interest in the subject loan through the PAA. See Silva Dec. ¶¶ 15-16. Silva also declares that, contrary to Plaintiffs' allegations, Wamu's business records do not show that the Wamu transferred the loan to WMMSC because there is no document that memorializes any transfer. See Silva Dec. ¶ 18. Further, and contrary to Plaintiffs' allegations, the note was not securitized or sold to investors because there is no business record or any documentation that reflects a sale or transfer as described by Plaintiffs. See id. at ¶¶ 19-20. Silva also declares that Chase holds the original note in its possession at a designated confidential location and that Chase is the designated beneficiary under the deed of trust. See id. at ¶¶ 20-21.

## LEGAL STANDARD

1. Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008); Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011). A moving party must

---

[3] The Court takes judicial notice of the Fifth District Court of Appeal docket in Case F062321. See Botelho, 692 F.Supp.2d at 1178.

6

make each of these showings to be entitled to injunctive relief. South Fork Bank Council of W. Shoshone v. United States DOI, 588 F.3d 718, 721 (9th Cir. 2010). Without a sufficient showing of a likelihood of success on the merits, a preliminary injunction cannot issue. See Gonzales v. Dep't of Homeland Security, 508 F.3d 1227, 1242 (9th Cir. 2009); First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1385 (9th Cir. 1987).

   2.  Claim Preclusion & Issue Preclusion

  In determining the preclusive effect of a state court judgment, federal courts will follow the state's rules of claim and issue preclusion. White v. City of Pasadena, 671 F.3d 918, 926 (9th Cir. 2012); Robi v. Five Platters, Inc., 838 F.2d 318, 321-22 (9th Cir. 1988).

  Claim preclusion, also called res judicata, "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 896 (2002). Thus, claim preclusion has three requirements under California law: (1) the second lawsuit must involve the same "cause of action" as the first lawsuit; (2) the first lawsuit must have resulted in a final judgment on the merits; and (3) the party to be precluded must have been a party, or in privity with a party, to the first lawsuit. See San Diego Police Officers' Ass'n v. Sand Diego City Emples. Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2008); Bullock v. Philip Morris USA, Inc., 198 Cal.App.4th 543, 557 (2011). For purposes of claim preclusion, the term "cause of action" is defined in reference to the "primary rights theory." San Diego, 568 F.3d at 734; Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 797 (2010). Under this theory, "a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." Crowley v. Katleman, 8 Cal.4th 666, 681 (1994). A primary right is indivisible, which means that even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one cause of action. See Boeken, 48 Cal.4th at 798; Crowley, 8 Cal.4th at 681. As a result, "res judicata will bar not only claims actually litigated in a prior proceeding, but also claims that could have been litigated." Adam Bros. Farming, Inc. v. County of Santa Barbara, 604 F.3d 1142, 1149 n.5 (9th Cir. 2010); Busick v. Workmen's Comp. Appeals Bd., 7 Cal.3d 967, 975 (1972). Further, "a judgment entered after

the sustaining of a general demurrer is a judgment on the merits, and, to the extent that it adjudicates that the facts alleged do not establish a cause of action, it will bar a second action on the same facts." Palomar Mobilehome Park Ass'n v. San Marcos, 989 F.2d 362, 364 (9th Cir. 1993). Lastly, "the finality required to invoke the preclusive bar of res judicata [under California law] is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired." Kay v. City of Ranch Palos Verdes, 504 F.3d 803, 808 (9th Cir. 2008); Franklin & Franklin v. 7-Eleven Owners for Fair Franchising, 85 Cal.App.4th 1168, 1174 (2000).

Issue preclusion, also called collateral estoppel, "precludes relitigation of issues argued and decided in prior proceedings." Mycogen, 28 Cal.4th at 896. The issue litigated may be an issue of fact or an issue of law. George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd., 49 Cal.3d 1279, 1289-90 (1989); Lumpkin v. Jordan, 49 Cal.App.4th 1223, 1229 (1996); see also White, 671 F.3d at 926. The requirements of issue preclusion are:  (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue to be precluded must have been actually litigated in the former proceeding; (3) the issue to be precluded must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding; and (6) application of issue preclusion must be consistent with the public policies of preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation. White, 671 F.3d at 927; see Pacific Lumber Co. v. State Water Resources Control Bd., 37 Cal.4th 921, 943-44 (2006). With respect to the second requirement, an issue is "actually litigated" when "it is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined . . . ." People v. Sims, 32 Cal.3d 468, 484 (1982). An "issue" includes "any legal theory or factual matter which could have been asserted in support of or in opposition to the issue which was litigated." Border Business Park, Inc. v. City of San Diego, 142 Cal.App.4th 1538, 1566 (2006). The third requirement, that an issue was "necessarily decided," has been interpreted to mean that the issue was not "entirely unnecessary" to the judgment in the prior proceeding. Lucido v. Superior Court, 51 Cal.3d 335,

1  342 (1990).  Lastly, the finality requirement means that "the time for seeking a new trial or
2  appealing a judgment has expired and any appeal is final."  People v. Burns, 198 Cal.App.4th
3  726, 731 (2011).

## DISCUSSION

The Court granted Plaintiff's request for an ex parte temporary restraining order on the basis that Plaintiffs' verified complaint indicated that Chase only obtained the rights to service the mortgage in question due to transfer of the note by Wamu to WMMSC.  See Doc. No. 8; see also Complaint ¶ 24.  However, following the submissions of Chase, the Court must conclude that Plaintiffs do not have a likelihood of succeeding in this matter.

### 1.  Grounds Relied Upon In Temporary Restraining Order

In nearly every complaint filed in the Tuolumne County Superior Court, as well as in filings with the DCA, Plaintiffs challenged the standing of Chase, Chase's ownership interest in the note and loan, and Chase's ability to foreclose on the property.  Critically, Plaintiffs expressly made arguments and alleged in their papers filed in the DCA that Wamu transferred the note to WMMSC, and that the note was later securitized.  See RJN Ex. 18 at p.6.  As quoted above, the DCA addressed Plaintiffs' position regarding Chase and Wamu's transfer to WMMSC.  The DCA held that the Superior Court properly had taken judicial notice of the FDIC's PAA with Chase, the PAA provides Chase with the requisite ownership interest in the loan because Chase was assigned all assets of Wamu and Wamu's subsidiaries, and the fact that the loan may have been securitized did not sufficiently alter Chase's ownership interest.  See Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*9.  The DCA held that the "[Superior Court] correctly found that Chase properly asserted the right to foreclose on the deed of trust pursuant to the assignment of loans by FDIC."  Id. at *14.  Significantly, the DCA also found that a dismissal without leave to amend was appropriate because Plaintiffs had not "established that they can allege facts that would state a cause of action if permitted to further amend the complaint . . . ."  Id. at *17.

These holdings are extremely damaging to Plaintiffs' case.  The DCA's holdings establish that Chase has the requisite authority and interest in the loan so that it can foreclose on the

Property, that the judicially noticed documents show that the allegations of transfer to WMMSC and securitization do not defeat Chase's interest and authority, and that Plaintiffs were unable to show that additional facts could have saved their complaints.  See id. at *14-*17.  The latter holding means that Plaintiffs' arguments and allegations made in their reply brief were insufficient to support amending the complaint and thus, failed to state a claim.  Plaintiffs did not appeal the DCA's decision and the time for appeal has passed.  Therefore, the DCA's decision is final.  The Court is aware of no reason why these specific holdings by the DCA would fail to meet the requirements for issue preclusion.[4]  See White, 671 F.3d at 927; Lucido, 51 Cal.3d at 341-42; Sims, 32 Cal.3d at 484; Border, 142 Cal.App.4th at 1566.

Additionally, the declaration of Roberto Silva is very damaging.  Silva is clearly in a position to have access to Wamu records and Chase records.  Silva's declaration indicates that, despite Plaintiffs' allegations, there are no records or documentation of any of the transfers or sales alleged by Plaintiffs in ¶ 24 of their Complaint, and, if those transactions had actually occurred, then there would be documentation.  See Silva Dec. ¶¶ 18-21.[5]  Silva's declaration indicates that Chase has the requisite interest and authority to foreclose on the Property because there is no documentation to support Plaintiffs' alleged transfers.

### 2.   Other Causes Of Action

In terms of the other causes of action alleged, the Court does not see a sufficient likelihood of success to warrant an injunction.

---

[4] As part of Plaintiffs' reply, Plaintiffs argue that an "England reservation" is available and applies in this case.  Pursuant to *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411 (1964), under some circumstances a litigant in state court may "reserve" his right to return to federal court in order to litigate federal causes of action.  However, in order for an "*England* reservation" to be effective, there generally must be evidence that the litigant somehow informed the state court of his reservation.  See England, 375 U.S. at 421; Dunex, Inc. v. City of Oceanside, 473 Fed. Appx. 814 (9th Cir. 2012).  Here, there is no evidence presented, or explanation made, as to how Plaintiffs invoked an "*England* reservation."  That is, there is insufficient evidence that a reservation was made.  Moreover, an "*England* reservation" does not bar application of issue preclusion in federal court.  See San Remo Hotel L.P. v. San Francisco City & County, 364 F.3d 1088, 1094,1096 (9th Cir. 2004); Dodd v. Hood River County, 136 F.3d 1219, 1227-28 (9th Cir. 1998); Dodd v. Hood River County, 59 F.3d 852, 863 (9th Cir. 1995); Los Altos El Granada Investors v. City of Capitola, 2010 U.S. Dist. LEXIS 108839, *7-*8 (N.D. Cal. Sept. 29, 2010); cf. Remo Hotel L.P. v. San Francisco City and County, 545 U.S. 323, 342 (2005).  Accordingly, Plaintiffs' argument regarding an *England* reservation is unavailing.

[5] Silva also points out that, although Plaintiffs state that Standard & Poor CUSIP number and/or Pool Number is on the note or deed of trust, no such number is identified.  See Silva Dec. ¶ 19.

1    Plaintiffs' TILA claim is based on the premise that Chase is only a servicer of the note
2 and lacks the requisite interest and authority to foreclose. See Complaint ¶ 35. However, the
3 DCA's opinion precludes Plaintiff from arguing that Chase is only a servicer and has no
4 authority to foreclose on the Property. See Lucido, 51 Cal.3d at 341-42; Sims, 32 Cal.3d at 484;
5 Border, 142 Cal.App.4th at 1566; Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*17.

6    Plaintiffs' second cause of action alleges violations of RESPA, specifically § 2605(e),
7 because Chase failed to respond to qualified written requests dated January 21, 2009, March 14,
8 2009, and April 20, 2009. See Complaint ¶ 38. However, the statute of limitations for a
9 violation of § 2605(e) is 3 years. See 12 U.S.C. § 2614. Plaintiffs' complaint was not filed until
10 August 30, 2012. Thus, this claim is time barred on its face. Further, to properly state a claim
11 for a failure to respond to a qualified written request, a plaintiff must allege and describe actual
12 harm suffered. See Segura v. Green Tree Servicing, LLC, 2011 U.S. Dist. LEXIS 64649, *19-
13 *20 (E.D. Cal. June 16, 2011). There are no such allegations in the Complaint.

14   Plaintiffs' third cause of action under FIRREA states no claim. The allegations merely
15 state that FIRREA does not insulate Chase from its conduct after it acquired Wamu's assets
16 through the PAA. See Complaint ¶¶ 42-44. This is in essence a mere allegation that some form
17 of defense does not apply to Chase.

18   Plaintiff's fifth cause of action alleges violations of UCC Art. 3. This cause of action
19 alleges in part that Chase is not the lender, mortgagee, or beneficiary and has no legal authority to
20 initiate foreclosure. See Complaint ¶ 57. Again, the DCA's opinion precludes Plaintiff from
21 arguing that Chase does not have the right or legal authority to initiate foreclosure. See Lucido,
22 51 Cal.3d at 341-42; Sims, 32 Cal.3d at 484; Border, 142 Cal.App.4th at 1566; Knopp, 2012 Cal.
23 App. Unpub. LEXIS 5105 at *8-*17. Also, the elements of claim preclusion have been met with
24 respect to this cause of action. The parties in this case and Knopp II are identical. The Plaintiffs'
25 allegations under this cause of action are essentially identical to the allegations made in Knopp
26 II.[6] Cf. Complaint ¶¶ 58-76 with RJN Ex. 20 ¶¶ 72-89. The Complaint in Knopp II was

---

[6] Paragraph 57 in the Complaint was not alleged in Knopp II. However, because the allegations in this paragraph are precluded by the DCA, the Court does not consider Paragraph 57 for purposes of claim preclusion.

11

1  dismissed with prejudice through a general demurrer, and the dismissal is now final.  Thus,
2  Plaintiffs are precluded from asserting that Paragraphs 58 through 76 state a viable cause of
3  action.  See San Diego, 568 F.3d at 734; Palomar, 989 F.2d at 364; Bullock, 198 Cal.App.4th at
4  557.
5       Plaintiffs' sixth cause of action is for "no contract."  This cause of action relies on
6  assertions that Chase has no authority to foreclose, that Wamu failed to disclose that the loan
7  would be immediately securitized, that the loan was transferred and securitized, and that Wamu
8  failed to disclose that it expected Plaintiffs to be unable to repay the loan, which resulted in an
9  absence of the meeting of the minds between Plaintiffs and Wamu.  See Complaint ¶¶ 78-89.
10 There are problems with this cause of action.  First, some courts have characterized these claims
11 as "affirmative defenses," and not causes of action.  See Bowe v. American Mortg. Network,
12 Inc., 2012 U.S. Dist. LEXIS 80044, *7 (C.D. Cal. June 8, 2012).  Other courts have concluded
13 that this claim and these specific allegations are a species of a fraud claim, but that the
14 allegations fail to meet the required pleading standard of Federal Rule of Civil Procedure 9(b)
15 and thus, fail to state a claim.  See Javaheri v. JP Morgan Chase, 2011 U.S. Dist. LEXIS 62152,
16 *9-*10 (C.D. Cal. June 2, 2011).  Second, as discussed above, the DCA's opinion precludes
17 Plaintiffs from arguing that Chase does not have authority to foreclose.  See Lucido, 51 Cal.3d at
18 341-42; Sims, 32 Cal.3d at 484; Border, 142 Cal.App.4th at 1566; Knopp, 2012 Cal. App.
19 Unpub. LEXIS 5105 at **8-*17.  Third, Silva's declaration indicates that the note/loan was not
20 transferred as alleged by Plaintiffs because there are no documents from Wamu or Chase that
21 indicate such transfers occurred.  Finally, courts have recognized that, in the absence of a special
22 duty, a financial institution owes no duty of care to a borrower when the institution's
23 involvement in the loan transaction does not exceed the scope of its role as a mere money
24 lender."  Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal.App.3d 1089, 1096 (1991); see
25 Oaks Management Corp. v. Superior Court, 145 Cal.App.4th 453, 466 (2006).  "The success of
26 the borrower's investment is not a benefit of the loan agreement which the lender is under a duty
27 to protect."  Nymark, 231 Cal.App.3d at 1096.  A lender "is under no duty to determine the
28 borrower's ability to repay the loan," and the "lender's efforts to determine the . . . ability to

12

repay by a borrower are for the lender's protection, not the borrower's." Das v. WMC Mortg. Corp., 831 F.Supp.2d 1147, 1161 (N.D. Cal. 2011); Perlas v. GMAC Mortgage, LLC, 187 Cal.App.4th 429, 436 (2011). Thus, there was no duty to disclose a belief that Plaintiffs would not be able to repay the loan.

Plaintiffs' seventh cause of action is for quiet title. The elements of claim preclusion have been met with respect to this cause of action. The parties in this case and Knopp II are identical. The Plaintiffs' allegations under this cause of action are identical to the allegations made in Knopp II.[7] Cf. Complaint ¶¶ 90-96 with RJN Ex. 20 ¶¶ 204-209. The Complaint in Knopp II was dismissed with prejudice through a general demurrer, and the dismissal is now final. Thus, Plaintiffs are precluded from asserting that Paragraphs 58 through 76 state a cause of action. See San Diego, 568 F.3d at 734; Palomar, 989 F.2d at 364; Bullock, 198 Cal.App.4th at 557.

Plaintiffs' eighth cause of action is for declaratory and injunctive relief. Plaintiffs rely on allegations that Chase had no authority to foreclose, that Chase and QLS do not have standing, and that Chase's substitution of QLS as trustee was improper because a signature on behalf of Chase was forged. See Complaint at ¶¶ 98-101. Again, the DCA's opinion precludes Plaintiffs from arguing that Chase does not have standing or authority to foreclose. See Lucido, 51 Cal.3d at 341-42; Sims, 32 Cal.3d at 484; Border, 142 Cal.App.4th at 1566; Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*17. With respect to the allegations of a forged signature, Chase obtained its interest in the subject loan in 2008. See RJN Exs. 1, 2; Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*14. The allegedly fraudulent substitution of trustee was apparently recorded on May 1, 2009. Chase has been attempting to foreclose on this property since 2009, and has relied upon a notice of default and intent to sell and notices of trustee sale that were sent to Plaintiff and recorded in the Tuolumne County Recorder's Office in 2009, 2011, and 2012, all by QLS. See RJN Exs. 3-6. It is apparent that Chase intends, and did intend, for QLS to be the trustee. Thus, the events of this case do not indicate a forged signature.

---

[7] Paragraph 57 in the Complaint was not alleged in Knopp II. However, because the allegations in this paragraph are precluded by the DCA, the Court does not consider Paragraph 57 for purposes of claim preclusion.

13

Plaintiffs' ninth cause of action is for intentional and negligent infliction of emotional distress. This claim relies on allegations that Chase knew that it was only a servicer, and not the beneficiary or lender, and that Chase and QLS knew and/or intended for their actions to cause emotional distress. See Complaint ¶¶ 102-114. Again, the DCA's opinion precludes Plaintiffs from arguing that Chase is merely a servicer and does not have authority to foreclose. See Lucido, 51 Cal.3d at 341-42; Sims, 32 Cal.3d at 484; Border, 142 Cal.App.4th at 1566; Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*17. Additionally, materially identical allegations were made in the Ninth and Tenth causes of action in Knopp II. Cf. RJN Ex. 20 at ¶¶ 133-143 with Complaint ¶¶ 102-114. Knopp II is a final decision on the merits. It appears that claim preclusion applies, and that Plaintiffs are precluded from asserting that Paragraphs 102 through 114 state a cause of action. See San Diego, 568 F.3d at 734; Palomar, 989 F.2d at 364; Bullock, 198 Cal.App.4th at 557.

Plaintiffs' tenth cause of action is for violation of the UCL. Part of the allegations in support of this cause of action assert that Chase did not acquire a sufficient interest in the loan from Wamu or the PAA to be able to foreclose, and then relies on the applicability of *Javaheri v. JP Morgan Chase*. See Complaint ¶ 119. The DCA expressly analyzed the applicability of *Javaheri* to Plaintiffs' claims and found that *Javaheri* did not support Plaintiffs. See Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *10-*11. Further, the DCA held that Chase had the authority to foreclose on the Property because it obtained assets of Wamu and the loan through the PAA. See id. at *8-*14. The DCA's opinion precludes Plaintiffs from arguing that Chase does not have authority to foreclose or that *Javaheri* undermines Chase's authority. See Lucido, 51 Cal.3d at 341-42; Sims, 32 Cal.3d at 484; Border, 142 Cal.App.4th at 1566; Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*17. With respect to the remainder of the allegations, the allegations made in this Complaint are essentially identical to the allegations made in the final complaint of Knopp I. Cf. RJN Ex. 14 at ¶¶ 19-43 with Complaint ¶¶ 116-118, 120-143. The granting of the general demurrer without leave to amend in Knopp I was affirmed by the DCA, and those orders are final. Claim preclusion applies, and thus, Plaintiffs are precluded from asserting that Paragraphs 116 through 143 state a cause of action. See San Diego, 568 F.3d at

734; Palomar, 989 F.2d at 364; Bullock, 198 Cal.App.4th at 557.

Finally, Plaintiffs' fourth cause of action is for fraudulent foreclosure process. Plaintiffs appear to re-allege in a shorthand form the assertions that TILA, UCC Art. 3, and the UCL were violated, that Chase and QLS do not have evidence of a lawful debt, the deed of trust was reconveyed, and that Chase does not have any interest in the loan or the Property. See Complaint ¶¶ 46-55. For the reasons stated above, there is not a reasonable likelihood of success on Plaintiffs' TILA, UCC Art. 3, and UCL claims. Also, and again, Plaintiffs are precluded from arguing that Chase does not have authority or standing to foreclose on the Property.[8] See Lucido, 51 Cal.3d at 341-42; Sims, 32 Cal.3d at 484; Border, 142 Cal.App.4th at 1566; Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*17.

## CONCLUSION

Plaintiffs were granted a temporary restraining order, and an order to show cause why a preliminary injunction should not be entered was issued. Chase has responded and submitted numerous documents in opposition. The documents and arguments by Chase show that the Plaintiffs do not have a reasonable likelihood of success. This is because Plaintiffs' causes of action appear to be largely barred by either issue preclusion or claim preclusion, based on the final orders of the Tuolumne County Superior Court and the Fifth District Court of Appeal. Under these circumstances, the Court will deny Plaintiffs' request for a preliminary injunction. See Gonzales, 508 F.3d at 1242; First Brands, 809 F.2d at 1385.

Additionally, as the above analysis indicates, it appears that all of Plaintiffs' causes of action are either barred by claim and/or issue preclusion, failure to state a claim, or are barred by the applicable statute of limitations. In these circumstances, it is appropriate for the Plaintiffs to show cause why their Complaint should not be dismissed without leave to amend under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. See Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir. 1981) ("A trial court may act on its own

---

[8] The Court also notes that the DCA concluded that none of the various claims and allegations found in the various complaints in Knopp I were sufficient to state a claim for wrongful foreclosure. See Knopp, 2012 Cal. App. Unpub. LEXIS 5105 at *8-*17.

initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim . . . but the court must give notice of its *sua sponte* intention to invoke Rule 12(b)(6) and afford plaintiffs an opportunity to at least submit a written memorandum in opposition to such motion.").

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiffs' motion for a preliminary injunction is DENIED;
2.  The temporary restraining order issued by this Court on August 31, 2012 (Doc. No. 8), is DISSOLVED;
3.  Plaintiffs shall show cause in writing on or before September 28, 2012, why this case should not be dismissed pursuant to Rule 12(b)(6) without leave to amend;
4.  Defendants may file a response to Plaintiffs' submission on or by October 5, 2012; and
5.  If the Court determines that a hearing is necessary after reviewing the submissions of the parties, the Court will set a hearing date at that time.

IT IS SO ORDERED.

Dated:   September 14, 2012

CHIEF UNITED STATES DISTRICT JUDGE